IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JOSHUA R.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Civ. No. 6:23-cv-01469-MK

OPINION AND ORDER

**KASUBHAI,** United States Magistrate Judge:

    Plaintiff Joshua R. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). All parties have consented to allowing a Magistrate Judge to enter final orders and judgment per the Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* ECF No. 2. For the following reasons, the Commissioner's final decision is REVERSED and REMANDED for further proceedings.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

1

## PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI on December 15, 2020, alleging an onset date of January 1, 2018. Tr.[2] 51. His application was denied initially and upon reconsideration. Tr. 57, 73. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on February 15, 2023. Tr. 33–49. On March 6, 2023, the ALJ issued a decision finding Plaintiff not disabled within the meaning of Act. Tr. 18–28. The Appeals Council denied Plaintiff's request for review on September 12, 2023. Tr. 1–6. This appeal followed.

## FACTUAL BACKGROUND

Born in 1974, Plaintiff was 43 years old on his alleged disability onset date. Tr. 51. He has a high school education and is unable to perform his past relevant work as a plant trimmer. Tr. 26–27.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v.*

---

[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

*Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), which is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141, 107 S.Ct. 2287; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of December 15, 2020. Tr. 20. At step two, the ALJ found that Plaintiff had the following severe impairments: depression and anxiety. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. Tr. 21. The ALJ then assessed Plaintiff's RFC and found Plaintiff was capable of performing a full range of work at all exertional levels with the following limitations:

> He can understand, remember, and carry out simple instructions. He can deal with occasional changes in a routine work setting. He can use judgment to make simple work-related decisions. He cannot perform work requiring a specific production rate (such as assembly line work). He is able to tolerate frequent contact with supervisors, occasional contact with co-workers, and the general public.

Tr. 22–23.

At step four, the ALJ found that the Plaintiff was unable to perform his past relevant work as a plant trimmer. Tr. 26. At step five, the ALJ found that, in light of Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform despite his impairments, including hand packager, industrial cleaner, cleaner II, router, cleaner, housekeeping, and mail clerk. Tr. 27–28. Thus, the ALJ concluded that the Plaintiff was not disabled within the meaning of the Act. Tr. 28.

## DISCUSSION

Plaintiff argues that the ALJ (1) failed to properly incorporate the social interaction limitations contained in the medical opinions of State agency psychologists Sergiy Barsukov, Psy.D., and Susan Daugherty, Ph.D., and (2) failed incorporate a limitation to repetitive work into Plaintiff's RFC, despite finding persuasive the medical opinion by Robin Jewett, PA. Pl.'s Br. 2–20 (ECF 10).

### I.   Social Interaction Limitations in the RFC

Plaintiff argues that the ALJ erred in rejecting the social interaction limitations assessed in the medical opinions provided by state agency doctors Sergiy Barsukov, Psy.D., and Susan Daugherty, Ph.D., despite finding their opinions persuasive Pl.'s Br. at 10–17. As relevant to the case at hand, Drs. Barsukov and Daugherty reviewed Plaintiff's records and opined that he was moderately limited in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and in his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Tr. 55, 70. They further opined that Plaintiff was not significantly limited in his ability to interact appropriately with the general public, to ask simple questions or request assistance, and to accept instructions and respond appropriately to criticism from supervisors. Tr. 55, 69–70. As a result of their findings, they believed Plaintiff should be limited to brief, indirect public/coworker contact. Tr. 55, 70.

The ALJ partially credited these opinions, noting that both physicians found Plaintiff could perform simple tasks with additional social interaction restrictions. Tr. 26. However, the ALJ found the social interaction limitations "unpersuasive for several reasons." *Id*. Consequently, the ALJ formulated an RFC limiting Plaintiff to being able to "understand, remember, and carry out simple instructions," as well as "able to tolerate frequent contact with supervisors, occasional contact with co-workers, and the general public." Tr. 23. Plaintiff argues that the ALJ committed harmful error by ignoring the social interaction limitations set by the state agency physicians. Pl.'s Br. at 10–17.

The Commissioner argues that the ALJ's interpretation of Drs. Barsukov and Daugherty was not error, citing *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) for the proposition that a reviewing court must "look[] to all the pages of the ALJ's decision" when determining whether substantial evidence supports that decision. The Commissioner then cites to *Andy v. Kijakazi*, 2023 WL 6620299, at *2 (9th Cir. 2023) (unpublished) for the proposition that even if "the ALJ's analysis of the supportability and consistency of [the doctor's] opinion is summarized in one sentence," that analysis is valid if "at other points throughout his decision the ALJ clearly articulated why [the Plaintiff's] complaints . . . were not supported by the record." Finally, the Commissioner argues that the ALJ identified several instances in the record that contradict the social interaction limitations assessed by the state agency physicians. Def.'s Br. 10–12 (ECF 12). The Court agrees with the Commissioner's contention.

Here, the ALJ found that Plaintiff only had a mild limitation in his ability to interact with others. Tr. 22. As support, the ALJ noted that Plaintiff shops in stores for food and clothing approximately once a week for 20-30 minutes, that he interacts with a few friends, that he plays disc golf with friends, that he helps those friends weekly, that he gets along "ok" with authority figures, and that he has never been fired from a job because of problems with social interaction. Tr. 22, citing

Tr. 186–188, 269. Despite Plaintiff stating that he sometimes has trouble getting along with others because he gets "irritated easily", and that he does not like to be around or meet new people, his medical records show that his mood and affect were normal, and that he was generally pleasant and bright. Tr. 40, 43; Tr. 25, citing Tr. 270, 289, 297, 308, 322. Lastly, the ALJ found the state agency doctors' opinions unsupported by the findings of Robin Jewett, the psychological consultative examiner, who opined that Plaintiff's ability to relate to others, including fellow workers and supervisors, was intact, noting that he "is quite pleasant." Tr. 26, citing Tr. 273.

Plaintiff argues that the ALJ did not properly take his testimony into account, including that Plaintiff stated he cancels doctors' appointments because he does not like to be around or meet new people, that this was corroborated by a lay witness. Pl.'s Br. at 12–15. However, what Plaintiff asks for is a reweighing of the evidence, and "where the evidence is susceptible to more than one rational interpretation," this Court "must uphold the ALJ's decision." *Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005). As such, the ALJ did not err by not incorporating greater social interaction limitations into Plaintiff's RFC.

## II.    The RFC

The RFC is the most a person can do in light of their physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. An ALJ is responsible for determining a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence." *Id.*; SSR 96-8p, *available at* 1996 WL 374184. The RFC is used at step four of the sequential analysis to determine if a claimant can perform past relevant work and at step five to determine if a claimant can adjust to other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a), 416.920(a).

An ALJ may rely on the testimony of a vocational expert ("VE") to determine whether a claimant can perform past relevant work at step four or other work in the national or regional economy at step five. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). Limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock*, 240 F.3d at 1163–65. The Court should uphold step four and five determinations "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). At issue in this case is the ALJ's translation of Plaintiff's limitations into concrete restrictions within the RFC. The ALJ found Plaintiff has a moderate limitation in understanding, remembering, or applying information, as well as in his ability to concentrate, persist, and maintain pace. Tr. 22. The ALJ, adopting the findings of the state agency psychologists, as well as the psychological consultative examiner, assessed that Plaintiff is capable of understanding, remembering, and carrying out simple instructions, and using his judgment to make simple work-related decisions. Tr. 22–23, 55, 67–68, 273.

a.   **Limitation to Repetitive Tasks**

An ALJ's hypothetical to a vocational expert must accurately set forth all of a claimant's credited limitations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("If an ALJ's hypothetical does not reflect all of the claimant's limitations, then 'the expert's testimony has no evidentiary value to support ta finding that the claimant can perform jobs in the national economy.'" (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)). However, the Court may affirm if the ALJ's failure to include all of the claimant's limitations was harmless. *See, e.g.*, *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (reviewing for harmless error). "An error is harmless only if it is 'inconsequential to the ultimate

nondisability determination.'" *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)).

Plaintiff alleges error because RFC restrictions to "simple instructions" do not address his limitation to "repetitive tasks." Tr. 273; Pl.'s Br. at 4–8. Plaintiff argues that a limitation to "repetitive" tasks would further restrict what jobs would be available to him, that the jobs contemplated by the VE all include multiple tasks, and therefore, a limitation to repetitive tasks was incorrectly omitted from his RFC. Pl.'s Br. at 7–8. Plaintiff thus contends that this omission resulted in an erroneous RFC and hypothetical to the VE.

The Court agrees that omitting the limitation to "repetitive tasks" without explanation amounts to legal error. The Commissioner argues there is no error because Jewett did not state Plaintiff was *limited* to repetitive tasks, but that his ability to carry out simple, repetitive tasks was simply intact, meaning that the RFC was more restrictive because having an intact ability is not the same as being limited in that ability. Def.'s Br. at 5. While that is a unique interpretation, it is one lacking in support, begging the question: If Jewett had not meant to limit Plaintiff to this specific level of functioning, why assess him in this way? Notably, the Commissioner provides neither caselaw nor legal theory to support this interpretation, nor do they even attempt to provide any level of explanation. Furthermore, the agency physicians support the consultative examiner's opinion, with each of them noting that Plaintiff is capable of simple work-like tasks, though none of them indicate whether the tasks need be repetitive. Tr. 55, 68, 71.[3]

Plaintiff points to a recent Ninth Circuit decision in *Leach v. Kijakazi,* 70 F.4th 1251 (9th Cir. 2023) to further bolster his argument. Pl.'s Br. at 6. In *Leach*, the ALJ omitted the word "short" from the limitation of "short, simple instructions" in the hypothetical to the VE. Based on

---

[3] State agency psychologist Susan Daugherty opined that Plaintiff is capable of "simple, routine" tasks, but it is not entirely apparent whether "routine" and "repetitive" are interchangeable.

9

the hypothetical, the VE offered three jobs, all with a reasoning level of two. Jobs with reasoning level one only require an ability to "apply commonsense understanding to carry out simple one-or-two-step instructions," whereas jobs with reasoning level two require an ability to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions." Leach, 70 F.4th at 1256. In that case, the Court could not conclude whether someone with limitations to short, simple instructions could perform the three jobs provided, and the case was remanded for further proceedings.

Unlike *Leach*, this is not a case concerning Plaintiff's reasoning level, and neither the Commissioner nor Plaintiff can provide any caselaw in support of their positions as it pertains to "repetitive tasks." Like *Leach*, however, in the same way that some jobs can have "longer-than-short, simple instructions," there must be jobs that can have multiple tasks while still being repetitive, and jobs with few tasks that are also not repetitive. Leach, 70 F.4th at 1256. That, however, is a question not before this Court. Consequently, because the VE was not presented with a hypothetical contemplating all of Plaintiff's limitations, and it is unclear whether the proffered jobs could be considered repetitive, the ALJ has erred in such a way that it is not inconsequential to the ultimate non-disability determination. Lambert, 980 F.3d at 1278.

## IV.   Remand

When a court determines the Commissioner erred in denying benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings of the immediate payment of benefits, the Ninth Circuit employs the following "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally

10

sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). If all three requisites are met, the court may remand for benefits. *Id*. However, even if all of the requisites are met, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled. *Id*. at 1021.

Here, the first requisite is met because the ALJ erroneously rejected Plaintiff's limitation to "repetitive tasks" by failing to incorporate it into the resulting RFC and hypotheticals posed to the VE. Further proceedings would be useful for the ALJ to adequately consider whether the jobs proffered by the VE would still be valid if the limitation to "repetitive tasks" were included in the hypothetical. On remand, the ALJ must incorporate a limitation to "repetitive tasks" into the Plaintiff's RFC, or provide reasoning with substantial evidence for its exclusion, reformulate the Plaintiff's RFC, and obtain further VE testimony.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court REVERSES and REMANDS for further proceedings.

IT IS SO ORDERED.

DATED this 20th day of August 2024.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge